## Whitt et al. v. Kentland Coal & Coke Co.

June 18, 1943.

J. M. Boling for appellants.

Harman, Francis & Hobson for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This equity action was filed in the Pike circuit court by appellee, Kentland Coal and Coke Company, against appellants, Sarah J. Whitt, and her husband, Wallace Whitt, whereby plaintiff sought to quiet its title to some 6 or 8 acres of land bordering on Levisa Fork of Big Sandy river in Pike County, Kentucky, to which area defendants were asserting adverse title. The answer denied plaintiff's title and asserted title in defendants. After considerable proof taken by depositions, the cause was submitted to the court and it sustained the prayer of plaintiff's petition, and dismissed defendants' counterclaim, whereby they sought to establish and quiet their title. From that judgment defendants prosecute this appeal.

The sole question in the case is one of fact as to the

correct location of the beginning corner of the deed to Sarah J. Whitt, executed on July 27, 1921, by her father and mother, George H. Hunt and Sarah M. Hunt. The beginning corner in the description of the conveyed land by that deed says: "Beginning at the mouth of a small drain near upper end of a four acre field on the left side of Levisa river descending; thence up drain with its center to top of hill thence," &c., around the conveyed boundary so as to contain 50 acres more or less. The timber on the land was expressly reserved by the grantors, but some years later it was sold by George H. Hunt to the husband of the vendee in the deed, and the reservation contained therein was released. The 4-acre field referred to was on the west side of Levisa Fork and on the side of a mountain, the foot of which ran practically to the river. In 1924 the vendor in that deed, George H. Hunt, sold the timber on his tract of land, adjoining the tract that he and his wife had conveyed to their daughter, to Lee Bertrand, who cut it and removed it. Before cutting the timber Lee Bertrand and George H. Hunt went upon the ground where the latter pointed out to Bertrand the corner which was the beginning one in the deed, and which was at the mouth of a drain running up the mountainside to its top on the west side of the river. In the mouth of that drain was a large rock, and Bertrand marked it with a cross, soon thereafter cutting the timber supposed to be on the unconveyed Hunt tract which ran to that point.

The Whitts testified that they were not living on the tract conveyed to them at that time, but were residing in Pikeville the county seat of the county in which the land lay, and that they did not discover that the timber had been removed until sometime thereafter. However, they did discover it a number of years before this action was filed, but no complaint whatever was made to anyone, nor any claim asserted in any manner with reference to what they now allege was a trespass on their property.

In 1934 the State Highway Department constructed a state highway, a portion of which ran along the west bank of Levisa river, which traversed, lengthwise, the entire 4-acre field, appropriating land entirely owned by George H. Hunt, and also land on the same side of the river embraced in the deed which he and wife had executed to appellant, their daughter. Pike county, in

obtaining the right of way for that road, could not agree with either George H. Hunt or his daughter, Sarah Whitt, upon the damages to their respective tracts by the taking of the right of way, which was 60 feet wide, and included damages to the remainder of the tracts. The county, therefore, instituted condemnation proceedings against each of the two respective owners and in describing the lands of each in the condemnation proceedings the line separating the tracts of the two owners was described as being located at the marked rock that Bertrand had made upon it, thence ascending that drain to the top of the mountain and continuing therefrom around the respective boundaries. In defending those proceedings neither Mrs. Whitt nor her husband claimed damages to any land above that point to another small drain (referred to by the witnesses as a swag in the mountainside and running from the river only about 150 feet up the side of the mountain); but insisted only in recovering damages for the right of way sought upon their land up to the drain now claimed by plaintiff as the true line.

The recovery had in those condemnation proceedings was, of course, for lands taken on the Hunt tract down to the line between it and the Whitt tract, and the Whitts recovered judgment for the land taken on their tract up to the Hunt line, making no insistence, as we have said, that they owned any land above that line. The plaintiff had acquired, through a sale made by George H. Hunt and wife, the coal underlying all of his land, including that conveyed to his daughter, which left the title in each adjoining tract as embracing the surface and all minerals thereunder, except coal. In 1937 Hunt and wife conveyed their entire holdings in their tract (which included all of it except coal) to one Flue, who acted in the matter as trustee for plaintiff, and in that deed the description of the land sold extended to the same line that was recognized in the condemnation proceedings. Flue, on the next day after obtaining that deed, conveyed the same property to plaintiff. After the last two conveyances the Whitts began to assert title to the contested area of land, contending that the drain which was marked by Bertrand, as we have stated, did not fit the description contained in the boundary conveyed to them in their deed from George H. Hunt and wife in July, 1921, since that drain was some 400 feet above the 4-acre field referred to in its description, and which they contended was too far from that field to be

near its upper end. They, therefore, insisted that the true and correct drain was one most nearly to the upper end of the field, and which contention they made and asserted in their answer in this case. The proof showed that there were about three small swags in the mountainside at the left of Levisa river and downstream from the 4-acre field, before reaching the Bertrand marked one, but they could not be considered as drains, except in extremely heavy rainy seasons; but the drain in the mouth of which the line was so marked is a considerably larger one and runs to the top of the mountain—it being large enough to float logs in wet seasons, and to which Bertrand appropriated it in removing the timber off the Hunt tract.

At the time the deed from George H. Hunt and wife to his daughter, Mrs. Whitt, was executed the drain near the upper end of the 4-acre field was not pointed out or more definitely described than the statement contained in the deed, nor was there any marking of any kind then made to designate the particular drain referred to therein. The line running from the mouth of the drain went up it to the top of the mountain and, of course, there was no marking of it. The drain, or swag, now contended for by defendants as the true drain and line mentioned in their deed, if found to be the correct one, would give them the area they claim, but if the correct drain is the one contended for by plaintiff, then the court properly quieted plaintiff's title up to it.

The witnesses testifying for defendants gave no testimony positively fixing the beginning point of their deed at the mouth of any particularly described drain, but stated at most that it was understood at the time to be the drain nearest to the upper end of the 4 acre field, but no one testified that such understanding was entertained by the vendor, George H. Hunt, who executed that deed. On the contrary, both he and his wife testified that the drain they had in mind was the one in the mouth of which there was a big rock, and which was the one marked by Bertrand as the line to which he might cut the timber he had bought. In addition thereto, we have seen that when the timber was removed up to that drain no dispute or claim was made by defendants of any trespass committed upon any of their land.

But a more convincing fact against their present contention is their acquiescence as to the true location

of the disputed line as fixed in the condemnation proceedings; for if they then owned the land up to the swag, or drain, they now claim to own they would have been entitled to damages for the taking of about 400 more feet of their land for the building of the highway. Instead of making any such claim at that time they most emphatically admitted that their line ran up to the large drain in the mouth of which the line was marked by Bertrand, and which, to our minds, is most convincing that they at that time, and at all times prior thereto and since obtaining their deed, considered that drain, as the dividing line between them and the tract owned by George H. Hunt and wife.

The familiar rule that this court will not disturb the finding of facts by a chancellor unless it entertains from the proof more than a doubt as to its correctness. would call for an affirmance of the judgment, even if we should entertain a mere doubt as to the correctness of the chancellor's finding in this case. However, it is patent to us that the overwhelming weight of the testimony establishes the corner and the line contended for by plaintiff, and which the court so adjudged.

Wherefore, for the reasons stated, the judgment is affirmed.